OLIVER P. HAWKINS *vs.* METHODIST EPISCOPAL CHURCH OF
COTTAGE GROVE.

January 5, 1877.

Estoppel in Pais.—The definition of an estoppel *in pais*, given in *Pence* v.
*Arbuckle*, 22 Minn. 417, followed and applied to this case..

On October 16, 1871, the plaintiff of record, as assignee
in bankruptcy of M. L. & M. D. Sproat, bankrupts, recovered judgment by default, for $1,180.92, against the
defendant, in the district court for Ramsey county. The
cause of action on which the suit was brought accrued in
January, 1868, and was for labor and materials furnished
in the erection of defendant's house of worship, at Cottage
Grove, in Washington county. The summons in the action
was personally served, on September 25, 1871, on Morgan
L. Sproat, who, on July 28, 1866, had been elected a trustee
of defendant for the term of one year. A certified copy of the
record of this election was filed for record, and recorded in the
registry of deeds of Washington county, on May 22, 1867,
since which time no certificate or notice of any subsequent
election had been there filed for record or recorded; and the
plaintiff caused the summons to be served upon Sproat, after
making enquiry as to who were the trustees of defendant, and
in reliance on the information thereby obtained, and on the
above-mentioned record of his election. On February 26,
1875, the judgment was, for a valuable consideration, sold
and assigned to C. D. Strong, who, on August 24, 1875,
caused execution to be issued thereon, and levied on real
and personal property of defendant, which property was
afterward sold under the execution—Strong becoming the
purchaser—and the execution being returned on October 23,
1875.

In February, 1876, the defendant, appearing specially
for the purposes of the motion, moved for an order declar-

ing null and void the service of the summons, and all subsequent proceedings in the action, on the ground that Morgan L. Sproat was not a trustee of defendant at the time the summons was served on him. At the hearing of the motion conflicting affidavits were read as to the laws and usages of the denomination to which defendant belonged, in regard to the election of trustees, their resignation, etc. On behalf of Strong, the owner of the judgment, affidavits were read, from which it appeared that, in 1871, about the time the action was commenced, at the request of the defendant's minister and of John Laramy, one of its trustees, Strong called on plaintiff's attorney to effect, if possible, a reduction of the claim, on the ground of the defendant's poverty, no question being made by trustee or minister as to the correctness of the claim, which, however, they had expected would be reduced by a contribution from Sproat, had he not become insolvent. From such affidavits it further appeared that, after purchasing the judgment, Strong at once notified the trustees of defendant, and demanded payment, and afterwards had with the minister and trustees the negotiations mentioned in the opinion; and it was further claimed on his behalf that the application was not made for the purpose of interposing any defence to the action on the merits, but that the defendant might plead the statute of limitations, by which the original cause of action had become barred in January, 1874.

The motion was argued before *Brill* and *Simons,* JJ., who found that Sproat was not a trustee at the time he was served, and that the service and all subsequent proceedings were void, and should be set aside, and it was so ordered; from which order the plaintiff appealed.

*C. K. Davis* and *H. A. Castle,* for appellant.

*Lamprey & James,* for respondent.

BERRY, J. Upon the affidavits in this case we think the court below properly found that Morgan L. Sproat was not one of the defendant's trustees at the time when the sum-

v.23m—17

mons was served upon him. It follows, as was correctly held, that, for want of jurisdiction of the defendant, the judgment and the proceedings under it are void.

The plaintiff insists, however, that the defendant is estopped from objecting to the validity of the judgment by the conduct of its trustees and agents, and by receiving benefits, upon the basis that the judgment was valid, and then waiting until the statute of limitations had barred the original cause of action before moving to set aside the judgment.

In *Pence* v. *Arbuckle*, 22 Minn. 417, this court defines an estoppel *in pais* as follows, viz. : " An estoppel *in pais* arises when one, by his acts or representations, or by his silence when he ought to speak out, intentionally, or through culpable negligence, induces another to believe certain facts to exist, and such other rightfully acts, on the belief so induced, in such manner that, if the former be permitted to deny the existence of such facts, it will prejudice the latter."

In this case the matters appearing in the affidavits, and which are not denied, and are important with reference to the claim of estoppel, are these : The original cause of action upon which the judgment was based was barred, by the statute of limitations, in January, 1874. The judgment was assigned to its present holder, (C. D. Strong,) on February 26, 1875. Strong, in his affidavit, says " that, on April 6, 1875, he wrote to John Laramy, (one of defendant's trustees,) notifying him of the purchase of said judgment, and demanding payment; that, in response to said letter, Rev. S. Bolles, then preacher in charge of defendant—and, to the best of affiant's recollection and belief, said Laramy—came to affiant and commenced negotiations for the payment of said judgment; that, thereafter, and on June 19, 1875, at a regular quarterly meeting—called by Rev. D. Cobb, presiding elder—of the pastor, official members, and trustees of defendant, affiant met with them, as owner of

said judgment, and at said Cobb's request said Laramy and others of said trustees being present and participating in the proceedings ; that in said meeting various plans for liquidating said indebtedness to affiant, and satisfying said judgment, were discussed, but no claim was made that the said judgment was void, and no offers of compromise, based on the invalidity of said judgment, were made ; but affiant was asked to make, and did make, his best terms of payment as a favor to defendant, and the subject of discussion was the best means of raising the money without sacrificing the property of defendant.''

Strong's affidavit contains further allegations as to the action of the defendant, through its trustees and agents ; but these allegations are met on the other side by positive denials. The trustees (with the exception of one, who has deceased, and whose dying declaration to the same effect is referred to) all depose that they had no knowledge of the existence of the judgment, or of the institution or pendency of the action in which the judgment was rendered, until after Strong claimed to be the owner thereof, and not till after March, 1875 ; and that they had no knowledge as to the person upon whom the summons was served until after or about the time of the execution sale, on October 22 and 23, 1875, but supposed that the service was made, and could lawfully be made, by publication.

This state of facts fails to make out an estoppel, within the definition above quoted. The negotiations and discussions do not appear to have resulted in any definite conclusion, or in any agreement, or even proposition on the part of defendant's trustees. We are unable to perceive how the defendant could properly be said to have been induced by them to believe any fact, upon his belief in which he acted in the premises. It is claimed that the negotiations and discussions proceeded upon the basis of the existence of a valid judgment, and were, therefore, an admission of its validity. But in the first place there is no reason to suppose

that Strong's belief in the validity of the judgment was in any way induced by anything which appears to have taken place at the time of the alleged negotiations and discussions. On the contrary, the presumption is that he believed the judgment to be valid at the time when he purchased it. In the second place, if it were admitted that Strong's belief in the validity of the judgment was induced by the failure of defendant's trustees "to speak out," such failure could not be attributed to "culpable negligence," because the ground of invalidity was not then known to the trustees. As respects the matter of prejudice, it can hardly be said that anything alleged to have taken place at the negotiations and discussions could have induced him to wait until the statute of limitations had run against the original cause of action, for the statute had taken effect more than a year before he purchased the judgment. It might be urged that, if he had been made aware of the invalidity of the judgment, he would not have incurred the expense of the execution sale; but, even if this were an admitted fact, it would not, for reasons before suggested, bring the case within the principle of estoppel *in pais.*

The burden of making out the estoppel being upon Strong, we are thus reluctantly forced to the opinion that the action of the court below, in setting aside the judgment and all proceedings thereon, must be sustained—reluctantly, we say, for, upon perusing the papers in the case, we cannot resist the conclusion that the result arrived at is, in morals, though not in law, a practical injustice to the holder of the judgment. If the action of Mr. Bolles had not been repudiated—as it seems to us it ought not to have been—the result might have been entirely different.

Order affirmed.