MARY SULLIVAN et al.

v.

WILLIAM H. EDDY.

*Filed at Springfield November 23, 1896—Rehearing denied January 15, 1897.*

1. LIMITATIONS —*when seven years' payment of taxes on vacant land will defeat ejectment.* Seven years' payment of taxes on vacant land, made under color of title procured when the land was unoccupied, coupled with possession by the claimant after the expiration of the seven years, will bar an action of ejectment.

2. SAME—*possession by paramount owner defeats title obtained by seven years' payment of taxes.* Uninterrupted possession of vacant land by the owner of the paramount title during any portion of the period of seven years for which another pays the taxes under color of title will defeat the title based on such payment.

3. ADVERSE POSSESSION—*intruder cannot justify trespass by showing an outstanding title in stranger.* A mere intruder upon the notorious adverse possession of another cannot justify his trespass and intrusion under an outstanding title in a stranger, in the absence of evidence connecting him with such outstanding title.

4. INSTRUCTIONS—*an instruction which singles out particular facts is bad.* An instruction which singles out particular facts from the evidence and prominently calls the attention of the jury to them is properly refused.

5. EVIDENCE—*competency of tax deed when affidavit on which it was issued is insufficient.* On trial of an action of ejectment a tax deed offered by defendant is properly excluded as evidence of paramount title, when the affidavit on which it was issued fails to show a compliance with section 216 of the Revenue act, (Rev. Stat. 1874, p. 893,) but it is admissible to show color of title.

6. SAME —*deposition need not be suppressed when opened by order of court.* A deposition should not be suppressed for the reason that the clerk of the court opened the same and marked it filed, when such act is done by the authority of the court.

7. SAME—*acts sufficient to show possession of unenclosed lands.* Evidence that the party holding title to unenclosed lands visited the land nearly every week, pastured horses on it, set out trees, directed the erection of a small house, dug a well, and for more than twenty years mowed the land or let it to others to mow, and that the land was recognized and spoken of as his land, will justify the finding by a jury that such party had been in the adverse, open and notorious possession of the land for over twenty years.

APPEAL from the Circuit Court of Cook county; the Hon. EDMUND W. BURKE, Judge, presiding.

EDWARD ROBY, and S. P. SHOPE, for appellants.

C. S. DARROW, H. S. MECARTNEY, and MORRIS ST. P. THOMAS, for appellee.

Mr. JUSTICE CRAIG delivered the opinion of the court:

This was an action of ejectment, brought by William H. Eddy against Andrew Sullivan and Henry H. Gage, to recover a certain tract of land in Cook county, consisting of nine or ten acres, which is accurately described in the declaration. On a trial of the cause in the month of June, 1893, the plaintiff recovered the land in controversy, and the defendants appealed to this court, where the judgment was affirmed. (See *Sullivan* v. *Eddy*, 154 Ill. 199.) In July, 1894, before the expiration of one year after the first trial, the defendants paid the costs and took a new trial under the statute. On a second trial of the cause, before a jury, the plaintiff again obtained a verdict in his favor, upon which the court entered judgment. To reverse this latter judgment the defendants have brought this appeal.

William H. Eddy purchased the land in controversy from Peleg A. Barker, and obtained a deed from him January 11, 1856, which was duly recorded January 23, 1856. On the trial plaintiff claimed title to the premises, first, under a regular chain of conveyances from the United States to Barker and from Barker to himself; and second, twenty years' actual possession of the land under the deed from Barker before Henry H. Gage took possession in the spring of 1886.

The plaintiff read in evidence deeds purporting to convey lands of which the tract in question is a part, from the United States, by a continuous chain of title down to himself. One of the deeds in the chain, it is claimed, was not acknowledged as required by law, and

on that account the title did not pass by that deed. We shall not stop to discuss the question raised by this point, because if the plaintiff established his title in the other branch of the case, which we think he did, that was sufficient to authorize a recovery, regardless of the supposed defect in the deed referred to.

In 1865 Eddy purchased twenty acres, immediately adjoining the land in question on the north, from Phineas E. Merrihew, and from that time both tracts were used together by him as one tract, until Gage took possession of both tracts, in the spring of 1886. The evidence, therefore, in regard to the possession of one tract applies to the other, and it was stipulated on the trial that the evidence introduced, wherein either piece was involved, might, so far as competent, be read on the trial of the action involving the other tract. The twenty-acre tract was before the court in *Eddy* v. *Gage*, 147 Ill. 162. Sullivan set up no title to the land. He was placed in possession by Gage and paid no rent, but merely held possession of the land for Gage. The defendant Gage relied upon a tax sale of the land, followed by a deed executed in March, 1877, and seven successive years' payment of taxes while the land was vacant and unoccupied, followed by possession of the land in March, 1886, after the completion of the seven years' payment of taxes under the deed executed in March, 1877, as color of title.

The ruling of the court in the admission and exclusion of evidence has been criticised in the argument, but without entering upon a critical review of the questions raised, we are satisfied, after a careful consideration of the objections, that no prejudicial error was committed by the court in its rulings on the evidence.

It is claimed that the court erred in refusing to suppress a deposition of a witness named Childs, which was taken in the State of Indiana and transmitted to the clerk of the court in Cook county. After the deposition had been received by the clerk he opened it on Septem-

ber 25, 1895, and marked the deposition filed. This action of the clerk seems to have been done under and in pursuance of an order of court, and we see no reason why the deposition should have been suppressed.

If the land was vacant and unoccupied in March, 1877, when Gage procured color of title, and remained in that condition until March, 1886, the time Gage took possession, his color of title, seven years' payment of taxes and possession taken after the completion of the seven years' payment of taxes, would bar a recovery on behalf of Eddy. If, on the other hand, Eddy was in possession of the land during the seven years Gage paid the taxes, that fact would defeat the title of Gage set up under the Statute of Limitations, and if Eddy established twenty years' possession of the land under his deed from Barker, claiming title, he would be entitled to recover.

There were on the trial of the cause two leading and vital questions of fact to be determined, from the evidence, by the jury, viz.: First, whether Eddy was in the actual adverse possession of the land under claim of title for twenty years prior to the time Gage entered upon it and took possession in the spring of 1886; and second, was Eddy in the uninterrupted possession, under claim of title, during any portion of the seven years next preceding the fencing by Gage. The jury not only returned a general verdict in favor of the plaintiff, but under the instructions of the court returned two special findings, signed by all the jurors, as follows:

"Was William H. Eddy in the actual, open, visible, notorious, exclusive, uninterrupted and adverse possession of the land described in the declaration, under claim of title thereto, continuously for the full period of twenty years prior to the fencing of the land by the defendant Gage, in 1886?—Yes."

"Was William H. Eddy in the actual, open, visible, notorious, exclusive, uninterrupted and adverse possession of the land described in the declaration, under claim

of title thereto, during any portion of the seven years just prior to the fencing of the land by the defendant Gage, in 1886?—Yes."

If these special findings of the jury are sustained by the evidence, the defendants' title set up under the Statute of Limitations was worthless and the title relied upon by the plaintiff was a valid title, and one upon which he was entitled to recover the land. There is much evidence in the record tending to prove that Eddy went into the possession of the two tracts of land at the time he purchased them, and continued in the possession until Gage entered upon the land in March, 1886. We shall not go into the evidence of the different witnesses in detail. It would serve no useful purpose to do so. When Eddy purchased the lands he had them surveyed and established the corners and the lines. After the purchase of the twenty-acre tract in February, 1865, he used the two tracts together. Almost every Sunday Eddy visited the land. He mowed it, pastured horses on it, took his friends out to see the land, set out trees, directed the erection of a small house, dug a well, and every year from 1865 to 1886 he mowed the land or let it out to others to mow. The land was known and recognized in the neighborhood as the property of Eddy, or "Horse Eddy," as he was known. We think the evidence was ample to authorize the finding of the jury.

Upon the first trial of this cause the plaintiff called nine witnesses to establish his possession of the land for a period of twenty years. When the case was here on appeal we held the evidence of those nine witnesses was amply sufficient to sustain the finding of the jury in favor of Eddy on the question of possession. The evidence of those witnesses was before the jury on this second trial, and in addition a large number of other witnesses were introduced, which very much strengthened the evidence. It is true the defendants called witnesses on the last trial, but the evidence introduced did not overcome the

case made by the plaintiff. We must therefore hold, as we did when the case was here before, that the evidence fully justified the finding of the jury.

It is claimed in the argument that the court erred in giving plaintiff's seventh instruction, as follows:

"If the jury believe, from the evidence, that the plaintiff was in the open, notorious, exclusive and adverse possession of the land in controversy at and before the time the same was fenced by the defendant Gage, and that the defendant Gage acquired possession of the said land wrongfully and without the permission of the plaintiff, and ousted the plaintiff from said lands, then the court instructs you that the defendant Gage cannot defeat the plaintiff's recovery in this action by showing an outstanding title in a stranger, with which outstanding title the defendant Gage has in no way connected himself."

We think the instruction lays down a correct rule of law. The substance of the charge is, that a mere intruder upon the notorious adverse possession of another cannot protect his trespass and intrusion under an outstanding title in a stranger. This is a correct principle, and one that is fully sustained by the authorities. See *Jackson* v. *Harder*, 4 Johns. 211; *Tapscott* v. *Cobb*, 11 Gratt. 172; *Williams* v. *Sweetland*, 10 Iowa, 51; *Carlton* v. *Townsend*, 28 Cal. 219; *Enfield* v. *Permit*, 8 N. H. 512; *Jackson* v. *Schauber*, 7 Cow. 187; *Fisher* v. *Philadelphia*, 75 Pa. St. 392; *Page* v. *Campbell*, 25 Wis. 618; *Hardin* v. *Forsythe*, 99 Ill. 312.

It is also claimed that the court erred in refusing instruction No. 10. Upon looking into the record it will be found that the court gave, at the request of the defendants, sixteen long instructions. These, in connection with those given for the plaintiff, fully covered all legal questions involved in the case, and no necessity existed for giving further instructions on behalf of either party. Moreover, the refused instruction was bad, for the reason it singled out particular facts and prominently called the

attention of the jurors thereto. Instructions of this character have frequently been condemned by this court.

On the trial the defendants offered in evidence two certain delinquent lists, judgments of the county court, precepts, certificates of sale, with affidavits showing an alleged compliance with the statute requiring notice, and tax deeds, for the purpose of showing title to the land in question. Various objections were made to the introduction of these papers as showing title, and the court excluded the deeds as paramount title but admitted them in evidence as color of title. A number of objections are urged against the validity of the tax proceedings as title, but it will only be necessary to refer to one of them. It appears that the land sold for taxes was assessed in the name of L. S. Eddy. No notice of the sale was served on him, but a notice was published in a newspaper. The affidavits filed with the county clerk as a compliance with section 216 of the Revenue law, upon which deeds issued, will be found, upon examination, to be substantially like the affidavit in *VanMatre* v. *Sankey*, 148 Ill. 536, which this court in that case held defective. As the affidavits upon which the deeds issued failed to show a compliance with the Revenue law, the tax proceedings and deeds offered as title were properly excluded.

But it is said in the argument, "even if the affidavits and deeds were excluded as evidence of title, still the delinquent lists, judgments and precepts should have been received to prove that the land was known and assessed separately from all other land in the name of Lorenzo S. Eddy, and that the assessment was paid by sale." We do not see how the manner of the assessment or how the assessment was paid can have any special bearing on the question of title here involved. But however that may be, the exclusion of the papers offered was no such error as could work a reversal of the judgment.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*