HENRY G. METZGER, Appellant, vs. WILLIAM B. MAN-
LOVE, Appellee.

*Opinion filed June 16, 1909—Petition stricken October 7, 1909.*

1. INSTRUCTIONS—*when an instruction as to disregarding testi-
mony is not necessarily ground for reversal.* An instruction per-
mitting the jury to disregard the uncorroborated testimony of any
witness who they believe has been "successfully impeached," with-
out explaining the meaning of such term, is objectionable, in that
the jury may understand the term to apply to witnesses who have
been contradicted by other witnesses; but whether the giving of
such instruction is reversible error depends upon whether it ap-
pears from the whole record that the jury might have been mis-
led and the opposite party prejudiced by it.

2. PARTNERSHIP—*liability of secret partner does not extend be-
yond scope of business.* While the liability of a secret or dormant
partner to third persons does not depend upon their knowledge or
belief as to the existence of the partnership, yet it is essential to
such liability that the credit be given in a transaction within the
scope of the partnership affairs, and he is not liable on individual
contracts of other partners with respect to their personal matters.

APPEAL from the Appellate Court for the Third Dis-
trict;—heard in that court on appeal from the Circuit Court
of Hancock county; the Hon. ROBERT J. GRIER, Judge,
presiding.

CHARLES J. SCOFIELD, and APOLLOS W. O'HARRA, for
appellant.

J. N. CARTER, T. B. PAPE, VOSE & CREEL, J. W. WIL-
LIAMS, and S. P. LEMMON, for appellee.

Per CURIAM: This is an action of assumpsit brought
by Henry G. Metzger against William B. Manlove and
J. E. Manlove to recover about $16,000, for which the de-
fendants were alleged to be jointly liable. The declaration
contained only the common counts and charged a joint lia-
bility. William B. Manlove, who was the only defendant

served, denied that he was jointly liable and verified his pleas, setting up this defense by affidavit. Upon the first trial of the issue formed on these pleas a judgment was rendered against the defendants for the full amount of the plaintiff's claim. Upon an appeal to the Appellate Court for the Third District that judgment was reversed and the cause remanded for a new trial. A second trial was had, resulting in a judgment against the plaintiff for costs, and that judgment having been affirmed by the Appellate Court, plaintiff has brought the record to this court for review.

This suit was brought to recover an overdraft in appellant's bank in Plymouth, Hancock county, Illinois, resulting from the payment of checks drawn on said bank by J. E. Manlove and used in the business of the Manlove Wool and Fur House during the latter part of 1901 and the first part of 1902.

Appellee, at the time of the trial, was seventy-seven years of age and resided on his farm about four miles from Plymouth, in Schuyler county, where he had lived since he was a small boy. In connection with his farming business appellee for a number of years bought and shipped furs. He had, however, retired from the fur trade several years before his son, Joseph E. Manlove, commenced trading in wool and furs under the name "The Manlove Wool and Fur House." The evidence tends to show that the appellee went out of the fur business some four or five years before Joseph E. Manlove commenced operations. For two seasons the son carried on his trading at his father's farm, where he then made his home. Then he moved his business to Bushnell, McDonough county, where the same was continued until in December, 1902, when he failed in business. His liabilities largely exceeded his assets. The balance due appellant's bank is something over $14,000, for which this suit is brought. The appellant sued appellee and Joseph E. Manlove as partners doing business under the name "The Manlove Wool and Fur House."

It appears from the opinion of the Appellate Court on the first appeal, which is reported as *Manlove* v. *Metzger*, 124 Ill. App. 383, that on the first trial appellant based his right to recover against appellee on two grounds: (1) That appellee was, in fact, a partner; (2) if not a partner in fact, he had held himself out as a partner, so as to estop him, as against appellant, from denying the existence of the partnership. On the last trial the only issue submitted to the jury by the instructions was, did a partnership in fact exist between appellee and his son?

The assignments of error in respect to giving and refusing instructions and the admission and exclusion of evidence make it necessary to examine the facts to determine whether the case is one requiring strict accuracy in the ruling on the law points. Such examination of the evidence has been made, and without discussing the facts in detail we merely mention some of the conclusions which the undisputed evidence established.

It is not disputed that Joseph E. Manlove had exclusive control of the business of the Manlove Wool and Fur House, and signed all checks, drafts and letters in his own name; that the bank account was kept in the name of J. E. Manlove; that appellant applied to appellee to sign notes as surety for Joseph E. Manlove and that appellee refused; that appellee had an account in appellant's bank at the time of the collapse of the Manlove Wool and Fur House, which appellant permitted appellee to withdraw without objection and made no effort to have any part of such balance applied on the account sued on; that after Joseph E. Manlove disappeared and was supposed to be dead, appellant made out a claim against his estate and swore to the same as an individual account; that appellee never put any money into the Manlove Wool and Fur House and never drew out any; that appellee loaned Joseph E. Manlove money and always required security, which fact was known to appellant. There is no evidence tending to prove the existence

of an express partnership agreement. From these facts and circumstances it is difficult to see how the jury or the Appellate Court could have reached any other conclusion than that appellant had failed to establish the existence of a partnership in fact. We do not regard the case as a close one on the evidence.

Appellant's first and most serious contention is, that the court erred in giving instruction No. 1 on behalf of appellee. That instruction is as follows:

"If the jury believe, from the evidence, that any witness who has testified in this case has been successfully impeached, or that he has knowingly and willfully testified falsely to any material question of fact in the case, then the jury would be warranted in disregarding the testimony of such witness, except in so far as he has been corroborated by other and credible evidence in the case or by facts and circumstances in proof."

The instruction is, in substance, identical with one considered by this court in *Chicago City Railway Co.* v. *Ryan,* 225 Ill. 287, and it is subject to the same objections pointed out to it in that case. It was there held that such an instruction, given without any explanation of the meaning of the term "successfully impeached," was liable to be understood by the jury as applying to witnesses who had been contradicted by other witnesses, "and if they [the jury] considered witnesses who had been contradicted as having been impeached, the instruction would authorize them to disregard the uncorroborated testimony of witnesses who had been contradicted, even though they might not believe that such contradicted witnesses had willfully testified falsely as to any material matter or even though the contradiction may have been as to an immaterial matter." It was held, however, that giving the instruction would not necessarily require a reversal of the judgment, but whether it constituted reversible error depended upon whether it appeared, from a consideration of the whole record, that the

jury might have been misled and the opposite party prejudiced by it.  Our investigation of this record convinces us that this is not a case so close on the evidence that the verdict of the jury might reasonably be said to have been influenced or determined by the instruction.

The appellant criticises instructions numbered 30 and 31 given for appellee.  We do not think these instructions open to any serious objection when read in connection with the entire series.

Appellant next insists that the court erred in refusing to give instruction No. 14 at his request.  The refused instruction is as follows:

"The court instructs the jury that if you believe, from the evidence, that William B. Manlove and J. E. Manlove were partners in the business of the Manlove Wool and Fur House, then it is not material on the question of the liability, if any, of the said William B. Manlove whether the plaintiff, Henry G. Metzger, did or did not know of the existence of such partnership, if such partnership existed, or whether or not the credit, if any, was extended by the plaintiff to J. E. Manlove alone.  If you believe, from the evidence, that William B. Manlove and J. E. Manlove were partners in the said business, it is immaterial whether the plaintiff, Henry G. Metzger, knew they were partners or believed they were partners, or whether he had any knowledge or belief at all on the subject, so far as the liability of William B. Manlove is concerned."

While this instruction does not direct a verdict it is liable to mislead, in that it entirely omits to require the jury to find that the credit was given in a partnership matter or for something in which the parties had a community of interest.  While the liability of a secret or dormant partner to third persons does not depend on the knowledge or belief of the creditor as to the existence of a partnership, still it is necessary, in order to charge one as a partner, that the credit should be given in a transaction within the

scope of the partnership affairs. Even if appellee was a partner, he would not be liable on the individual contracts of J. E. Manlove made in respect to his personal concerns.

Aside from the liability of the instruction to mislead in the respect pointed out, the court, at the appellant's request, gave instructions Nos. 3 and 8, which embody in more accurate language the hypothetical facts upon which appellee's liability depends. Instruction No. 3 is as follows:

"The court instructs the jury that the plaintiff is entitled to recover in this case if he has proved, by a preponderance of all the evidence, that he advanced and paid out the money sued for as charged in the bank book in the account of J. E. Manlove therein, and that these moneys were used in the business carried on in the name of J. E. Manlove or of the Manlove Wool and Fur House, and that during the time when these moneys were being so advanced and paid out and so used, if they were, the defendant William B. Manlove was a partner of the said J. E. Manlove or Joseph E. Manlove in the said business."

Instruction No. 8 contains, in somewhat different language, the same rule laid down in No. 3, preceded by a statement that the fact that the account was kept in the name of J. E. Manlove on the bank books did not preclude appellant from showing, if he could, that appellee was, in fact, a partner and jointly liable with J. E. Manlove. With these instructions in the hands of the jury, both of which assumed to state the facts, and all of the facts, essential to a recovery, it was unnecessary to give instruction No. 14, which merely recited certain facts other than those contained in instructions Nos. 3 and 8, and told the jury that proof of those facts was not necessary to the right of recovery. The omission of such facts from the instructions which recited all the facts appellant was required to prove, was, in effect, an instruction that any fact not therein recited was not essential to the right of recovery. There was no error in refusing this instruction.

Appellant insists that the trial court erred in striking out the evidence of certain witnesses who testified that after J. E. Manlove disappeared appellee said he intended to pay appellant's claim, or that he had promised to pay it. To meet any claim that appellant might seek to establish, based on the promise of appellee after the debt was incurred, appellee interposed the plea of the Statute of Frauds, to which appellant demurred specially, reciting in his demurrer that "the declaration counts upon the joint promise of the two defendants, William B. Manlove and Joseph E. Manlove, and the plaintiff cannot recover without proving their joint liability, and any evidence tending to show no joint liability can be availed of by William B. Manlove without this plea." The court sustained the demurrer and the plea of the statute was eliminated from the trial.

The court did not err in striking out evidence which only tended to prove an individual liability. Such evidence was not responsive to the issues. But there is another reason why this ruling ought not to reverse the judgment. On page 8 of the abstract we notice that when appellant was on the stand in his own behalf he testified that two or three days after J. E. Manlove left, appellee came into his bank and said "I wouldn't lose a dollar by it;" "he said he was going to pay it all himself." This evidence was not stricken out nor was it denied by appellee. If the facts to which the evidence stricken out related had been relevant they were thus in the record. Appellant does not, however, pretend that he has a right to recover on the theory of appellee's promise made after the debt was incurred.

Appellant insists that the court erred in excluding certain evidence offered. The evidence to which objections were sustained mainly concerned the belief of appellant as to the existence of the partnership, and certain alleged statements made by J. E. Manlove to persons other than appellant to the effect that appellee was a partner. Neither the belief of appellant nor the statements of J. E. Manlove

were pertinent to the issues involved. There was no error in excluding this evidence. The same observation is applicable to the other evidence excluded.

We find no error in the record which would warrant us in reversing this judgment. The judgment of the Appellate Court for the Third District is affirmed.

*Judgment affirmed.*