## Cleopatra Wilson, Administratrix, Appellee, v. Chicago City Railway Company, Appellant.

### Gen. No. 15,069.

1. EVIDENCE—*when improper answer will not reverse.* An improper answer will not reverse if the fact which the answer tends to show was otherwise established and if no harm appears to have resulted.

2. EVIDENCE—*when irresponsive answer will not reverse.* If the question to which an irresponsive answer was given was proper and no motion to strike out such answer is made, a reversal will not be ordered.

3. EVIDENCE—*when as to speed competent.* An answer as follows, should not be stricken out because of the use of the words "I suppose:" "After the application of the brakes I suppose the car was moving about four miles an hour," inasmuch as the speed of the car is necessarily a matter of opinion. *Held*, however, that the action of the court in striking out such answer was not reversible error.

4. EVIDENCE—*when erroneous ruling that question was leading will not reverse.* The erroneous sustaining of an objection that a question was leading will not reverse if no harm appears to have resulted.

5. DAMAGES—*what not incompetent in action for personal injuries.* In an action for personal injuries it is competent for the plaintiff to show previous employment which he had had and what he had earned at such employment.

Action in case for death caused by alleged wrongful act. Appeal from the Superior Court of Cook county; the Hon. GEORGE A. DUPUY, Judge, presiding. Heard in this court at the March term, 1910. Affirmed. Opinion filed May 2, 1910. Rehearing denied May 16, 1910.

EDWARD C. HIGGINS and C. LEROY BROWN, for appellant.

C. J. MICHELET, for appellee.

MR. JUSTICE BAKER delivered the opinion of the court.

In an action on the case for wrongfully causing the death of Richard S. Wilson, plaintiff's intestate,

plaintiff had judgment for $10,000 and defendant appealed.

An electric car of defendant going east on the South track in Thirty-first street came in collision with a wagon going north near the middle, or a little east of the middle, of Fifth avenue, and by reason of such collision Wilson, the driver of the wagon, was thrown from the wagon, the forewheel of which ran over his left hand and mangled the thumb and fingers of that hand. Wilson's face was also cut and bruised and his wounds were covered and filled with the mud and dirt of the street. He was taken to the office of Dr. Hinn, a physician, a block from the place of the accident, and there his wounds were cleansed, the thumb and first three fingers amputated and the wounds on the other two and on the face dressed. Dr. Hinn called at Wilson's house one or more times a day and dressed his wounds. Some days after the injury the injured hand began to swell and discharge pus and the tenth day symptoms of tetanus appeared. Tetanus anti-toxin was at once administered, without effect, and thirteen days after the injury the patient died of tetanus, leaving a widow and four young children.

A witness called by defendant was asked and answered, in English, several questions and then stated that he could not speak English. The trial judge interrogated the witness and finally permitted the defendant to examine him through an interpreter, and he was so examined. We see nothing improper in the conduct or remarks of the trial judge, but only evidence of a proper effort on his part to ascertain whether the witness' knowledge of English was so limited as to make it necessary that he be examined through an interpreter.

Witnesses for the plaintiff testified that the forewheel of the wagon ran over the hand of Wilson; that his fingers were cut and little pieces were hanging down; that he was taken to Dr. Hinn's office five minutes after he was hurt. Dr. Hinn testified that when

he first saw Wilson his thumb and first two fingers were hanging loose. Defendant offered no evidence tending to contradict the testimony of plaintiff's witnesses as to the injury sustained by Wilson, or the condition of his hand after the collision. Dr. Hinn in answer to a hypothetical question concluding as follows: "What is your opinion as to whether the condition in which Wilson was when he came to your office was caused by that fall due to the collision"; and answered over the objection of defendant, "Yes, I don't see what else could have caused it; it evidently was the case because he stated so". The last part of the answer was improper, but there was no motion to strike out any part of the answer. We see no substantial objection to the question, but if it be admitted that the question was improper, the defendant was not prejudiced by the question and answer, because the only conclusion that can justly be drawn from the other evidence in the case is that the injuries from which Wilson was suffering when taken to Hinn's office were sustained by him in the collision between the car and the wagon.

Hitchcock, a witness called by plaintiff, testified that he had often ridden on the Thirty-first street cars of defendant and was on the car that collided with the wagon. He was asked within what distance he had seen such a car as that on which he rode, going at the speed the car was going when he first saw the wagon, could be stopped under conditions similar to those then existing, and answered, "With all the appliances working properly on that car I should have thought he could have stopped the car within two and a half or three car lengths of that car". The answer was not responsive, but there was no motion to strike out. We think the question was proper. C. C. Ry. v. McLaughlin, 146 Ill. 353.

The answer of the conductor as to the rate of speed of the car after the brakes had been applied, as the car was approaching the center of Fifth avenue, was:

"After the application of the brakes I suppose the car was moving about four miles an hour". On motion of plaintiff the answer was struck out. The testimony of a witness as to the speed of a car is necessarily an opinion or estimate, and we think the answer should not have been struck out because of the words, "I suppose." Hooper v. United Trac. Co., 17 Pa. Superior Ct. 68.

But the witness testified that between Fifth avenue and the next street west the car ran five or six miles an hour; that as it approached the center of Fifth avenue it was slowing down, and we do not think the striking out of the answer was harmful to the defendant.

The motorman testified that when he first noticed the team and wagon the front of his car was pretty close to the west crossing in Fifth avenue, and that his power was then off; that he threw off the power as he approached the crossing. He was asked by defendant's counsel how far west of the crossing he was when he threw off the power, and also, where he was with reference to the west crossing where he threw off the power, and the court sustained plaintiff's objection to both questions, but held that defendant might ask the witness where he was when he threw off the power. We think the questions were proper in form and that the objections thereto should have been overruled; but we are unable to see, if the power was off when the motorman discovered the wagon, as he testified it was, how it was material where the car was when the power was thrown off.

The conductor was asked by defendant's counsel where he was with reference to the first cross-walk when he discovered Wilson. The question was objected to as leading, and the court sustained the objection. The question was not leading, and we think the objection should have been overruled. But the ruling was not harmful, for the question was repeated in the form suggested by the court and the witness an-

swered that when he first saw Wilson, "I was about ten feet west of the west crossing of Fifth avenue".

Wilson when injured was employed by a certain teaming company and was paid $14 per week and extra for overtime. He had formerly been employed by the Longwell Teaming Company at $18 per week and extra for overtime, and shortly before his injury was promised re-employment by the Longwell Company. We think the court did not err in refusing to strike out the evidence as to the wages paid Wilson when he was in the employ of the Longwell Company. Knox v. Amer. Rolling M. Co., 236 Ill. 437.

The coroner's verdict was properly admitted in evidence. U. S. Life Ins. Co. v. Vocke, 129 Ill. 557; Pyle v. Pyle, 158 *id*. 289; Grand Lodge v. Weiting, 168 *id*. 408.

We find no reversible error in the rulings of the court on the instructions to the jury. Plaintiff's instruction 4 was given in C. C. Ry. Co. v. Ryan, 225 Ill. 287, and instruction 5 was given in W. C. St. R. R. Co. v. Foster, 175 *id*. 396. In each case the instruction was held free from reversible error and the judgment affirmed.

The negligence alleged in the declaration was the negligent operation of the car. We think that from the evidence the jury might properly find that the defendant was guilty of the negligence alleged; that Wilson was not guilty of contributory negligence; that as a direct result of the defendant's negligence Wilson sustained serious injuries; that the tetanus which caused his death was the direct result of such injuries, and therefore that the contention of appellant that the verdict is against, or not supported by, the evidence, cannot be sustained.

We think that the record is free from reversible error, and the judgment of the Superior Court is affirmed.

*Affirmed.*